## STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**

November 7, 2017
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**DANYEL K. HABIG,**
**Claimant Below, Petitioner**

vs.)    **No. 17-0151** (BOR Appeal No. 2051508)
                    (Claim No. 2015008186)

**EAGLE NATRIUM, LLC,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

In workers' compensation, a claimant is entitled to medically related and reasonably required treatment as long as the treatment is for an injury or disease sustained in the course of and resulting from employment. Danyel K. Habig was working for Eagle Natrium, LLC, when she was struck in the side of the head by a heavy piece of copper. We are asked to decide whether cervical herniated discs at C5-6 and C6-7 and stenosis at C5-6 and C6-7 should be added to Ms. Habig's claim. We are also asked to determine if dry needling and trigger point therapy for the neck should be authorized. After a thorough review of the evidence of record, we find that the requested diagnoses are not the result of the compensable injury and should not be added to the claim. Additionally, the requested treatment for the non-compensable conditions cannot be authorized. We also find, after consideration of the parties' briefs and evidentiary record, that the decisional process would not be significantly benefitted by oral argument. We find no substantial question of law or prejudicial error. Therefore, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Treatment notes from Barnesville Hospital emergency room the day after Ms. Habig's injury indicate she was treated at the work place medical area following the injury but was now experiencing headache, nausea, and a knot on her head. A CT scan was normal. Ms. Habig was diagnosed with traumatic brain injury. There was no neck pain, and she was advised to rest.

The report of injury indicates Ms. Habig sustained a head/brain injury. No mention was made of the cervical spine. A physician summary from Ohio Valley Medical Center noted that she was hit in the head nine days prior and was still feeling dizzy, nauseous, and had a headache. The impression was post-concussive headache. A CT scan was normal. Michael Kovalick, D.O., treated Ms. Habig and indicated she was still having persistent headaches. CT scans were negative. The impression was closed head injury with concussion and traumatic brain injury.

1

In a second report of injury, Ms. Habig asserted that she was struck in the head. Dr. Kovalick completed the physician's section and stated that he treated her for an occupational closed head injury with concussion. In October of 2014, Dr. Kovalick stated in a progress note that Ms. Habig was improving. The diagnoses remained closed head injury with concussion and traumatic brain injury. Shortly thereafter, the claim was held compensable for unspecified head injury. In a treatment note at the end of October, Dr. Kovalick indicated that Ms. Habig had good days and bad ones. The diagnosis remained closed head injury with concussion and vertigo. She further reported no significant neck pain in December of 2014. A month later, ChuanFang Jin, M.D., performed an independent medical evaluation in which she noted that Ms. Habig had no neck tenderness on examination.

Dr. Kovalick reviewed his treatment notes and found that Ms. Habig really has no mention of neck pain at the initial visit and first follow up. He found a physical therapy note where some paracervical muscles were treated along with the concussion treatment. He felt that it may be appropriate if she wanted to try therapy for a few weeks for the paracervical muscles, but he did not have enough information to add cervical spine strain to her claim eight months post injury.

Ms. Habig sought further treatment for her concussion symptoms. Maria Twichell, M.D., evaluated her and diagnosed concussion and neck pain with cervicogenic headaches. Dry needling and trigger point therapy to the neck was recommended. Dr. Kovalick recommended Ms. Habig continue with work conditioning and get started on therapy for dry needling two to three times a week for three weeks. The claims administrator denied authorization for dry needling and trigger point therapy for the neck.

In an independent medical evaluation in October of 2015, David Lobas, M.D., determined that Ms. Habig had reached maximum medical improvement for her compensable head trauma and possible cerebral concussion. She could return to full duty work over the following month. In a treatment note, Dr. Kovalick released Ms. Habig to return to part-time work in mid-October. He noted that she was doing physical therapy for her neck under her private insurance. A cervical MRI was repeated and showed degenerative disc disease at C5-6 and C6-7 with broad based posterior disc osteophyte complexes and superimposed left paracentral disc herniations, causing moderate central canal stenosis at both levels.

Dr. Jin issued a supplemental report regarding a request to calculate permanent impairment since Ms. Habig reached maximum medical improvement. She assessed 3% impairment. She noted that the neck had not been accepted as a compensable condition in the claim and it therefore received 0% impairment. In a January of 2016 letter, Ronald Hargraves, M.D., stated that Ms. Habig was injured in September of 2014 and since then had been experiencing neck pain and sub-occipital headaches without a specific history of cervical radiculopathy. He noted that a cervical spine MRI was reviewed and there is an annular tear at C6-7 and moderate stenosis at C5-6 and C6-7 due to disc herniations. He believed the herniations were the cause of the symptoms but did not recommend surgery at that time. The claims administrator denied the addition of cervical herniated discs at C5-6 and C6-7 and stenosis at C5-6 and C6-7 to the claim.

The Office of Judges affirmed the claims administrator's Orders denying the addition of cervical herniated discs at C5-6 and C6-7 and stenosis at C5-6 and C6-7 to the claim as well as denying treatment of such. It found that Ms. Habig was injured on September 10, 2014, but did not report cervical problems until June 3, 2015. As part of his occupational health services evaluation, Dr. Kovalick's checked back through Ms. Habig's treatment notes and saw no evidence of neck pain at the initial visit or the first follow up. He noted a physical therapy note which indicated some paracervical muscles were treated along with the concussion treatment. However, he stated that he did not have enough information to add cervical strain to the claim eight months post injury. Ms. Habig underwent an MRI on in November of 2015, which showed degenerative disc disease with herniations at C5-6 and C6-7. The Office of Judges found that Dr. Hargraves opined that Ms. Habig had been experiencing neck pain since her compensable injury; however, the Office of Judges found that Dr. Hargraves did not treat her until well over a year after the compensable injury occurred. The Office of Judges concluded that Ms. Habig did not report cervical pain until eight months after the compensable injury and it was noted in multiple medical records that she had no cervical pain on examination. The Office of Judges found that cervical herniated discs at C5-6 and C6-7 and stenosis at C5-6 and C6-7 should not be added to the claim, nor should the requested treatment for such be authorized. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on January 20, 2017.

On appeal before this Court, Ms. Habig argues that there is no evidence that she had cervical symptoms prior to the compensable injury. She also asserts that physical therapy notes show that she suffered from neck tenderness two weeks after the compensable injury occurred. Eagle Natrium, LLC, argues that Ms. Habig failed to report neck pain until eight months after the compensable injury occurred. She was evaluated by three different physicians on seven different occasions between the compensable injury's occurrence and June of 2015 who either reported no neck pain or found no neck pain.

After review of the evidence of record and consideration of the parties' arguments, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. Ms. Habig was injured in September of 2014 and did not report cervical pain until June of 2015. When Dr. Kovalick reviewed Ms. Habig's treatment notes as part of an occupational health services initial evaluation at Ohio Valley Medical Center, he stated that he saw no evidence of neck pain in the initial two treatment notes and a minor reference to treatment of paracervical muscles as part of the concussion treatment in physical therapy. But, he did not have enough information from her treatment records to add cervical strain as a compensable component of the claim eight months after the work-related injury. Because the evidence supports the Office of Judges' and Board of Review's conclusions that the conditions should not be added to the claim, the requested treatment was likewise properly denied.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

3

                                                                          Affirmed.

**ISSUED: November 7, 2017**


**CONCURRED IN BY:**
Chief Justice Allen H. Loughry II
Justice Robin J. Davis
Justice Margaret L. Workman
Justice Elizabeth D. Walker

**DISSENTING:**
Justice Menis E. Ketchum